# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| TERRANCE CRAIG, | ) | CASE NO. 4:21-CV-01406-CEF |
| | ) | |
| Petitioner, | ) | |
| | ) | U.S. DISTRICT JUDGE |
| | ) | CHARLES E. FLEMING |
| v. | ) | |
| | ) | U.S. MAGISTRATE JUDGE |
| WARDEN RONALD ERDOS, | ) | JENNIFER DOWDELL ARMSTRONG |
| | ) | |
| Respondent, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.     INTRODUCTION

Petitioner Terrance Craig ("Mr. Craig") seeks a Writ of Habeas Corpus under 28 U.S.C. U.S.C. § 2254. (ECF No. 1.) Mr. Craig, an Ohio inmate, is currently serving a 15-year sentence at the Toledo Correctional Institution for: (1) two counts of felonious assault and (2) one count of tampering with evidence. He asserts two grounds for relief. Respondent Warden Ronald Erdos ("Respondent") filed a Return of Writ. (ECF No. 7.)[1] Mr. Craig filed a Traverse. (ECF No. 9.) This matter is before me by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation of Mr. Craig's petition and other case-dispositive motions. For the reasons set forth below, I RECOMMEND the Court DISMISS and/or DENY Mr. Craig's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 and not grant him a certificate of Appealability.

---

[1] Ronald Erdos was warden of Toledo Correctional Institution where Mr. Craig filed his petition, and Michael Swartz is now Acting Warden. *See* https://drc.ohio.gov/about/facilities/toledo-correctional/toledo-correctional (last visited Mar. 12, 2024). Thus, Acting Warden Michael Swartz should be substituted as the proper respondent in this case. *See* 28 U.S.C.§ 2243 ("The writ . . . shall be directed to the person having custody of the person detained."); Fed. R. Civ. P. 25(d) (providing that, "when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending[,]" "[t]he officer's successor is automatically substituted as a party.").

1

## II.     RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Seventh District summarized the facts as follows:

{¶2} On October 30, 2017 at 7:42 a.m., Sydney Williams called 911 to report that Dawon Brigham was shot while he sat in his vehicle in front of the Austintown Walmart store. She said an unknown male approached the vehicle, shot the victim, and fled in a burgundy Chrysler 200. (St.Ex. 69).

{¶3} Video surveillance footage from the store that morning (which may be a minute behind the time on the 911 system) showed the shooting and surrounding events. On the morning of the shooting: the driver of a newer maroon Chrysler 200 arrived at the parking lot at 7:35 a.m. and backed into a parking space; four minutes later, he pulled forward at an angle, reversed through two spaces, and parked again; more than a minute later, he pulled forward and reversed back to his space; and then, he pulled through a spot, quickly turned into a lane heading toward the store, and began driving past the front of the store.

{¶4} In the meantime, other store cameras showed: Dawon Brigham pulled his white Cadillac into a parking space one spot away from the front doors of the store at 7:38; while Dawon remained in the vehicle, Sydney exited from his passenger door and entered the store at 7:39; she returned at 7:41 with a bag in her hand; instead of entering the vehicle, she circled it; and at 7:42, the maroon Chrysler swerved down an aisle and parked at an angle blocking the front of the white Cadillac.

{¶5} The driver of the maroon Chrysler exited the vehicle, and approached the driver's side of the white Cadillac from the front. The driver of the Chrysler was a black male wearing a tan jacket, a red shirt, and dark jeans. He pointed a gun at Dawon's closed driver-side window while Dawon drove the Cadillac in reverse; at this point on the video, the driver's window appears to break (showing when the shot was fired). One 9mm shell casing was found in the parking lot near this area. As the Cadillac fled, the shooter crouched behind a car. When he stood and started back toward his maroon Chrysler, Sydney appeared to be looking at him from

2

across the hood of the car he hid behind. The shooter then drove the maroon Chrysler from the scene. Dawon drove his Cadillac in a circle to flee the shooter and then ran into the store for help, while Sydney called 911.

{¶6} A law enforcement officer, who was on his way to the police station and who was also an emergency room technician, arrived immediately. He saw the white Cadillac was in front of the building with the driver's door open and a broken window, and he found the victim inside the store. (Tr. 269, 281). He said the bullet entered Dawon's upper abdomen (left of center) and a large bulge on the right side of the torso indicated the path of the bullet and where it stopped inside his body. (Tr. 270, 542); (St.Ex. 61). Dawon repeatedly declared that he was going to die while holding his side in pain. (Tr. 269, 271).

{¶7} Detective Yacavone was at the nearby Austintown Police Department and arrived at the scene within three to five minutes of the dispatch. (Tr. 325, 334). He too noticed that Dawon appeared to be in excruciating pain. The detective testified that Dawon said he was shot by Sydney's male friend and Sydney added that the shooter was her ex-boyfriend, Dashawn Craig. (Tr. 289-291, 346).

{¶8} Due to chaos at the store, the detective found it necessary to remove Sydney from the scene as the ambulance transported Dawon; the detective asked if Sydney would accompany him to the nearby police station, estimating he left five minutes after arriving. (Tr. 287-289, 292). At the police station, Sydney reiterated that Dashawn Craig was the shooter and the driver of the maroon Chrysler 200. She provided further details of her arrival at the store and the shooting (confirmed by the store's exterior and interior surveillance footage).

{¶9} Another officer researching a database for "Dashawn Craig" found the name "Terrance Dashawn Craig" (Appellant herein). (Tr. 347). The photograph attached to Appellant's official record was presented to Sydney at the police station, and she confirmed his identity. (Tr. 348). Detective Yacavone thereafter drove Sydney to the hospital to visit Dawon, but he was in surgery at the time. (Tr. 350).

{¶10} Sydney provided consent to search her phone. Detective Solic, who performed the phone search, discovered that an iCloud account for "TerranceCraig" had previously logged-in to iTunes from Sydney's phone. (Tr. 429, 433). A state agent provided Appellant's phone number to the detective so he could extract the texts to Sydney from Appellant. The agent testified that Appellant told him this was his phone number a week before the shooting. (Tr. 405). After the shooting, Appellant spoke to Detective Solic from that phone number. (Tr. 458).

{¶11} The detective extracted the following messages sent to Sydney from Appellant's phone in the half hour before the shooting: "Oh and it's some hitters Omm watch they might come in there to get watch"; "You think shit a game you brushed a bunch of ppl the wrong way"; "I never killed nobody"; and "So it don't matter tell them what you want you lying cause I gave you a disease." Five hours

after the shooting, the following messages were sent during a ten-minute span to Sydney from Appellant's phone: "You playing crazy"; "But I'm gone win in the end cause you foul"; "Keep playing you go down with me"; "Bet have it yo way I'm done with you omm it's fuck you now you choose sides"; "Fuck you I mean that dude you playing sooooooo foul"; "You was on his side when he got hit wasn't you now you on his side in the hospital smdh now I'm just out here on the run"; "Thought I was cold"; "Bitch you the coldest"; "Fuck that we need money to fight des bitches"; and "It's this side and that side period." (Tr. 448-454); (St.Ex. 68B).

{¶12} Within two hours of the shooting, the Youngstown Fire Department was dispatched to a fully engulfed vehicle fire near an abandoned section of streets. The vehicle was a maroon 2015 Chrysler 200 displaying Ohio license plate number HGE 7815. (Tr. 486-487); (St.Ex. 73, 79). An arson investigator was asked to evaluate the vehicle at 10:00 a.m., after it had been towed by a private towing company to a secure lot. (Tr. 494). He concluded the fire began in the passenger compartment and was set purposely. (Tr. 497, 499). There was a gas can in the backseat area of the vehicle. (Tr. 507). An Austintown police officer searched the inside of the vehicle for evidence related to the shooting and found burnt pieces of clothing on the driver's seat, including tan canvas that appeared to be from the neck and chest area of a jacket and denim that appeared maroon and black. (Tr. 505-507); (St. Ex. 91-92, 110-11). He also recovered a belt buckle and red t-shirt material in connection with the vehicle fire.

{¶13} A Youngstown police officer testified that he responded to a call on October 27, 2017 (three days before the shooting). He took a report from Sydney Williams, who was very upset and crying. She reported that Terrance Craig was driving a maroon Chrysler 200 with Ohio license plate number HGE 7815. (Tr. 554-555).

{¶14} On the morning of November 3, 2017 (four days after the shooting), a Youngstown police officer was dispatched to an apartment where he found Sydney Williams bleeding from an injury. (Tr. 514). There was a large amount of blood on her shirt and on the carpet. (Tr. 516). She did not want to speak to the officer. She was transported to the emergency room by ambulance. The medic observed a laceration on Sydney's forehead which appeared recent. (Tr. 526). Over objection, the medic testified that on the way to the hospital, Sydney said her boyfriend struck her in the head with a gun. (Tr. 529-530).

{¶15} A nurse practitioner who treated Sydney in the emergency room testified about a laceration on Sydney's upper forehead and a circular burn on her arm; Sydney declined the offer to suture her head wound. (Tr. 533-536). After an overruled objection, the nurse practitioner testified that Sydney reported sustaining her injuries when her ex-boyfriend hit her with a gun and his fist. (Tr. 534).

{¶16} A jailhouse informant testified that he was friends with Appellant for at least five years and was in jail while Appellant was being held there in this case. He asked Appellant why he would engage in a shooting in broad daylight at Walmart.

According to Appellant's friend, Appellant disclosed that he shot the man for "fucking with his girl" and he "caught the dude slipping out there" so he "upped the burner and hit him" while the victim was sitting in his car. (Tr. 228-229, 231, 249, 251, 257). He defined "burner" as street slang for a gun. (Tr. 231). This witness said Appellant indicated "anybody going to get that with fucking with him like that." (Tr. 249). He also said Appellant admitted that he beat up his girlfriend because "the dude was fucking his girl." (Tr. 229-230, 257).

{¶17} Appellant was convicted by a jury of the counts set forth in the indictment: (1) felonious assault for shooting Dawon Brigham on October 30, 2017, plus a firearm specification; (2) felonious assault for injuring Sydney Williams on November 3, 2017; and (3) tampering with evidence for the vehicle fire on October 30, 2017. He was sentenced to three years for the firearm specification, six years for each felonious assault, consecutive to each other but concurrent to three years for tampering with evidence, for a total of fifteen years. Appellant appealed from the August 28, 2018 sentencing entry.

*State v. Craig*, No. 18 MA 0102, 2020 WL 1487282, 2020-Ohio-1102, ¶¶2-17 (7th Dist. Mar. 3, 2020).

## III. PROCEDURAL HISTORY

### A. <u>State Court Conviction</u>

On November 27, 2017, Mr. Craig was indicted in the Mahoning County Court of Common Pleas on the following offenses: (1) one count of felonious assault of Dawson Brigham in violation of R.C. § 2903.11(A)(2) with a firearm specification; (2) one count of felonious assault of Sydney Williams in violation of R.C. § 2903.11(A)(2); and (3) one count of tampering with evidence in violation of R.C. § 2921.12(A)(1). (ECF No. 7-2, Exhibit 1.) Mr. Craig pleaded not guilty on all charges. (ECF No. 7-2, Exhibit 2.)

On July 19, 2018, a jury found Mr. Craig guilty on all counts and the firearm specification. (ECF No. 7-2, Exhibit 3.) The trial court subsequently sentenced Mr. Craig to a total of 15 years imprisonment. (ECF No. 7-2, Exhibit 4.) This term of imprisonment included six years in prison for felonious assault of Dawson Brigham, plus three consecutive years for the firearm

specification; six years for felonious assault of Sydney Williams; and three years for tampering with evidence. (*Id.*) The trial court ordered that Mr. Craig's felonious assault counts shall be served consecutively to each other, and Mr. Craig's tampering with the evidence counts shall be served concurrently with the count charging him with felonious assault of Sydney Williams. (*Id.*)

### B.  Direct Appeal

On September 25, 2018, Mr. Craig, represented by new counsel, filed a notice of appeal to the Seventh District Court of Appeals. (ECF No. 7-2, Exhibit 5.) On May 31, 2019, Mr. Craig filed an appellate brief raising the following assignments of error:

(1) As to the felonious assault of Dawon Brigham, the statements of Ms. Williams to Detective Yacovone did not qualify as an "excited utterance," and were thereby admitted in error depriving Appellant of a fair trial.

(2) As to the felonious assault of Dawon Bringham, appellant was denied a fair trial by the court allowing in numerous hearsay statements from Williams which ran afould [sic] his right to confront his accusers as contained in the Sixth and Fourteenth Amendment.

(3) As to the felonious assault of Sydney Williams, Appellant was denied a fair trial by the court allowing a number of hearsay statements, without an exception, to be told to the jury.

(4) As to the felonious assault of Sdney [sic] Williams, Appellant was denied a fair trial by the court allowing in numerous hearsay statements from Williams which ran afoul his right to confront his accusers as contained in the Sixth and Fourteenth Amendments.

(5) The conviction for tampering with evidence was based on insufficient evidence and/or against the manifest weight of the evidence as the state failed to prove that Appellant started the fire, or that anything of value to the investigation was destroyed therein.

(ECF No. 7-2, Exhibit 6, PageID#96.) The state appellate court affirmed the trial court's judgment on March 3, 2020. (ECF No. 7-2, Exhibit 8.)

### C. **Ohio Supreme Court**

On May 12, 2020, Mr. Craig, represented by counsel, appealed to the Ohio Supreme Court.

(ECF No. 7-2, Exhibit 9.) In his memorandum of support of jurisdiction, Mr. Craig asserted the

following assignment of error:

> (1) Even in the context of excitement structured police questioning outside the scope of an
> ongoing emergency renders a statement testimonial under Crawford v. Washington.

(ECF No. 7-2, Exhibit 10.) The Ohio Supreme Court declined jurisdiction pursuant to S.Ct.Prac.R.

7.08(B)(4). *State v. Craig*, 159 Ohio St.3d 1446, 2020-Ohio-1102, 149 N.E. 3d 524 (Ohio 2020);

(ECF No. 7-2, Exhibit 11.)

### D. **Federal Habeas Action**

On July 21, 2021, Mr. Craig, represented by counsel, filed his 28 U.S.C. § 2254 habeas

petition. (ECF No. 1.) Mr. Craig's habeas petition raises the following grounds for relief:

> (1) Statements made during a police interrogation, by an unavailable witness that was
> never cross-examined, is testimonial hearsay and violates the Confrontation Clause of
> the United States Constitution.
>
> (2) Statements made to an EMT and ER Nurse, by an unavailable witness is testimonial
> hearsay and violates the Confrontation Clause of the United States Constitution.

(*Id.* at PageID#6-8.)

## IV.    STANDARDS OF REVIEW AND GOVERNING LAW

### A. **Jurisdiction**

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas

corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the

ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

A state prisoner may file a § 2254 petition in the "district court for the district wherein such person

is in custody or in the district court for the district within which the State court was held which

convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Mahoning County Court of Common Pleas sentenced Mr. Craig, and the Court takes judicial notice that Mahoning County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Craig's § 2254 petition.

### B. Exhaustion and Procedural Default

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*,

456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every state of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

Procedural default, however, can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C.  Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province

of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

### D.  AEDPA Standard of Review

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.*

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to

the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first

instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V.    ANALYSIS

### A.  Confrontation Clause – Legal Standard

The Confrontation Clause protects a defendant's right to cross-examine witnesses against him to examine the witnesses' credibility and possible biases. *See Davis v. Alaska*, 415 U.S. 308, 315-16 (1974). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Id.* at 315. The Confrontation Clause does not, however, prohibit the admission of all hearsay statements from witnesses who do not appear at trial. Rather, it bars "the admission of testimonial statements of a witness who did not appear at trial unless [the

witness] was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *See Crawford v. Washington*, 541 U.S. at 53-54 (2004). To determine whether a statement is testimonial, courts must consider whether it has "a primary purpose of creating an out-of-court substitute for trial testimony." *Michigan v. Bryant*, 562 U.S. 344, 357 (2011). Other relevant facts include whether the statement was made during or immediately after the crime, in the course of assisting police in apprehending the perpetrator, or in the course of medical treatment for the purposes of treatment and diagnosis. *See, e.g.*, *Davis v. Washington*, 547 U.S. 813, 828 (2006) (victim's statements during 911 call were not testimonial as they were made during and immediately after the crime, and the assailant was still at large); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312, n. 2 (2009) ("[M]edical reports created for treatment purposes ...would not be testimonial ..."). The formality or informality of a statement is also helpful in determining whether a particular statement has a primary purpose or use at trial. *Bryant*, 562 U.S. at 366; *see also Davis*, 547 U.S. at 833-34 (domestic violence victim's formal written statement in an affidavit given to a police offer was testimonial and therefore subject to the Confrontation Clause).

**B. <u>Ground One: Confrontation Clause Violation by Police</u>**

Mr. Craig asserts that his confrontational right to confront witnesses was violated by the testimony of a police officer, Detective Yacavone, concerning statements made by Ms. Sydney Williams that identified Mr. Craig as the shooter during a police interview. (ECF No. 1-2, PageID#23-28.) Respondent contends that this ground for relief is non-cognizable and lacks merit. (ECF No. 7, PageID#57-70.)  For the reasons set forth below, Respondent's argument is well-taken.

## 1. *Cognizability*

To the extent that Mr. Craig argues that the trial court's admission of Ms. Williams' statements to the police violated state evidentiary law, he fails to raise a federally cognizable claim. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle,* 502 U.S. at 67-68. A federal court may issue a writ of habeas court on the ground that petitioner's confinement violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). A "state appellate court's interpretation of its own law and evidentiary rules, 'including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Chambers v. Aris*, No. 22-1247, 2022 WL 18542503, at *2 (6th Cir. Nov. 3, 2022), *cert. denied*, --- U.S. ----, 143 S.Ct. 993, 215 L.Ed. 111 (2023) (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam)). Thus, "alleged errors in evidentiary rulings by state courts are [generally] not cognizable in federal habeas review." *Moreland v. Bradshaw*, 699 F.2d 908, 923 (6th Cir. 2012).

An evidential ruling, however, may violate due process and thus warrant habeas relief when the ruling "is so egregious that it results in a denial of fundamental fairness." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Nonetheless, "courts have defined the category of infractions that violate fundamental fairness very narrowly." *Wright v. Dallman*, 99 F.2d 174, 178 (6th Cir. 1993) (internal quotation marks and citation omitted). Generally, state court evidentiary rulings do not rise to the level of due process violations "unless they offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).

Here, the Seventh District Court of Appeals upheld the trial court's ruling that Ms. Williams' statement fell under the excited utterance exception to the hearsay rule pursuant to Ohio

Rule of Evidence 803(2). *Craig*, 2020 WL 1487282, ¶¶18-31. Ohio Rule of Evidence 803(2) defines an excited utterance as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The state appellate court determined that Detective Yacavone testified at the admissibility hearing that Ms. Williams was still under the stress of excitement caused by the crime at the time of the interview. Specifically, the state appellate court stated:

> {¶20} The detective described Sydney's demeanor as "obviously still under a lot of stress ***, very excited, very – I don't know -- almost like a nervous giddy, very excitable still *** very stressful giddy. It's hard to explain. She was very chattery, very talkative, very excited *** very emotional." (Tr. 290-291). She was shaking (but not uncontrollably), cried on and off, was breathing heavy while keeping up a "constant chatter," and "was obviously affected by a stressful situation." (Tr. 293-295). She voiced that she needed to get to the hospital. (Tr. 295). Although she calmed "a little bit" when they arrived at the police station, she was "still very stressed from the situation." (Tr. 296). The detective opined that Sydney's demeanor during the interview at the police station was more excitable than he sees in a typical interview and was not representative of her regular demeanor, as experienced in later encounters with her. (Tr. 295, 313).

*Craig*, 2020 WL 1487282, ¶20. After hearing Detective Yacavone's testimony that Ms. Williams' demeanor was highly agitated and watching a video of the interview, the trial court concluded that "she spoke very rapidly, and she was emotional and nervous, which prevailed over any reflective thoughts in the shooting incident." *Id.*, ¶23. Applying state law, the state appellate court determined that the trial court appropriately determined that Ms. Williams' statement met the requirements of the excited utterance exception to the hearsay rule as a matter of state law. *Id.*, ¶¶24-31. The state appellate court's determination is a determination of state law that is binding on this Court. *Bradshaw*, 546 U.S. at 746.

Moreover, the court's factual findings that Ms. Williams was in an excited state at the police station are presumed to be correct unless rebutted by clear and convincing evidence. *See* 28 U.S.C. §2245(e)(1). Mr. Craig fails to sufficient evidence to rebut the state court's factual findings.

(ECF No. 1-2, PageID#25-26; ECF No. 9, PageID#930.) For example, Mr. Craig attempts to challenge these factual findings by placing emphasis on the fact that "most of [Ms. Williams'] nervous behavior had subsided" by the time Detective Yacovone spoke to her at the police station. (ECF No. 9, PageID#930 (citing Tr. 296, 311-13.)) Yet, although Ms. Williams "started to calm down a little" when they arrived at the police station, the record shows that Detective Yacovone testified that Ms. Williams was "***still very stressed about the situation.***" (ECF No. 7-3, PageID#50) (emphasis added). Further, upon voir dire examination, Detective Yacovone stated that Ms. Williams appeared to be "full of anxiety…at some points." (*Id.* at PageID#715.)

Mr. Craig also asserts that the "record lacks evidence that Ms. Williams was crying during her interview at the station and Detective Yacovone's report did not mention any excited demeanor displayed by her." (ECF No. 9, PageID#930 (citing Tr. 306, 311.) Yet, Mr. Craig fails to produce any evidence to rebut Detective Yacovone's testimony that Ms. Williams' was "obviously still under a lot of stress" and "very stressful giddy." (ECF No. 7-3, PageID#291.) And even if Detective Yacovone had testified that Ms. Williams was not crying, Mr. Craig does not demonstrate that the state appellate court's determination of the facts was unreasonable. Accordingly, to the extent that Mr. Craig disputes whether Ms. Williams' statement satisfied the excited utterance exception, he does not state a federally cognizable claim.

### 2.  *Merits*

Mr. Craig argues that the statements Ms. Williams made at the police station approximately 20 minutes after the shooting—only five to 10 minutes after she left the scene—that identified Mr. Craig as a shooter were testimonial because the circumstances objectively indicated there was no ongoing emergency, and the primary purpose of the interrogation was to establish or prove past events potentially relevant to later criminal prosecution. (ECF No. 1-2, PageID#25-27.) In support

of this argument, Mr. Craig points to the formality of Ms. Williams' interrogation and the interrogation's temporal and physical distance from the shooting. (*Id.*) Mr. Craig thus contends that habeas relief is warranted because these statements violated the Confrontation Clause. Respondent disagrees. (ECF No. 7, PageID#61-69.) For the following reasons, I find that Mr. Craig's argument lack merit.

As stated above, Mr. Craig argues that the formality of Ms. Williams' interrogation and the interrogation's physical and temporal proximity to the shooting render Ms. Williams' statements identifying Mr. Craig as the shooter as testimonial. But the Ohio Court of Appeals rejected this argument. Specifically, the state appellate court stated:

> {¶33} Appellant contends Sydney's statements to the detective were admitted in violation of the confrontation clause because her statements were testimonial (as opposed to nontestimonial). In arguing the statements at issue were testimonial, he says they were the product of a formal police interrogation, the circumstances did not objectively indicate there was an ongoing emergency merely because the suspect was still at large, and the primary purpose of the interrogation was to establish past events relevant to the future criminal prosecution of the shooter.

> {¶34} The federal confrontation clause in the Sixth Amendment to the United States Constitution applies to federal and state prosecutions. *Crawford v. Washington*, 541 U.S. 36, 42, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Testimonial statements of a witness who did not appear at trial are not admissible under the confrontation clause (unless the defendant had a prior opportunity for cross-examination and the witness was later unavailable to testify). *Crawford v. Washington*, 541 U.S. 36, 53-54, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (the primary object of the confrontation clause is to bar testimonial hearsay). In *Crawford*, the defendant's wife was Mirandized and questioned by police at the police station after the defendant was arrested for stabbing a man; she was later unavailable to testify, and the state sought to introduce her statement suggesting her husband did not act in self-defense. The Supreme Court found her statement was testimonial and barred by the confrontation clause. Appellant adds emphasis to the *Crawford* Court's statement: "testimonial * * * applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* at 68.

> {¶35} Thereafter, the Court clarified that a statement is testimonial if the circumstances objectively indicate there is no ongoing emergency and the primary purpose of the interrogation is to establish past events potentially relevant to later

criminal prosecution. *Hammon v. Indiana*, 547 U.S. 813, 822, 26 S.Ct. 2266, 165 L.Ed.2d 224 (2006). The Court excluded as testimonial the statements of a domestic violence victim made to police and memorialized in an affidavit at the scene while police were questioning her and her husband at their house. *Id.*

{¶36} In a case decided within the same opinion (*Davis v. Washington*), the Court admitted as nontestimonial a victim's statements to a 911 operator during and shortly after her boyfriend's violent attack. *Id.* The Court declared that a statement can be labeled non-testimonial even if it was made in the course of a police interrogation if the circumstances objectively indicate the primary purpose of the interrogation was to enable police to assist in meeting an ongoing emergency. *Id.*

{¶37} If it objectively appears the primary purpose of an interrogation was to respond to an ongoing emergency, then the purpose of the interrogation is not to create a record for trial and does not fall within the scope of the confrontation clause. *Michigan v. Bryant*, 562 U.S. 344, 358, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011). The rationale "is not unlike that justifying the excited utterance exception in hearsay law." *Id.* at 361. "[W]hen a statement is not procured with a primary purpose of creating an out-of-court substitute for trial testimony * * *, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause." *Id.* at 358-359.

{¶38} In *Bryant*, the Court found statements made to police by a victim about the shooter were not testimonial as the circumstances of the interaction between the victim and the police objectively indicated that the primary purpose of the interrogation was to enable police to assist in meeting an ongoing emergency. *Id.* at 359. The ongoing emergency may extend "beyond an initial victim to a potential threat to the responding police and the public at large." *Id*. Still, this does not mean an emergency is ongoing "for the entire time the perpetrator of a violent crime is on the loose." *Id.* at 365. Moreover, "a conversation which begins as an interrogation to determine the need for emergency assistance" can "evolve into testimonial statements" if: a declarant provides police with information that makes clear that what appeared to be an emergency is not or is no longer an emergency or that what appeared to be a public threat is actually a private dispute; if a perpetrator is disarmed, surrenders, or is apprehended; or if the perpetrator flees and is unlikely to pose a threat to the public. *Id.* It is for the trial court in the first instance to determine when any transition from nontestimonial to testimonial occurred. *See id.*

{¶39} The existence or non-existence of an ongoing emergency, although among the most important considerations, is one factor in determining the primary purpose of an interrogation, and "there may be other circumstances, aside from ongoing emergencies, when a statement is not procured with a primary purpose of creating an out-of-court substitute for trial testimony." *Bryant*, 562 U.S. at 358, 361, 366, 374. Other factors to consider may be whether the interrogation occurred "at or near the scene" and "the informality of the situation and the interrogation." *Id*. at 360, 366, 377 (a formal interrogation at a police station, as in Crawford, is more likely

18

to provoke testimonial statements, than less formal questioning). In objectively viewing the totality of the circumstances on whether a statement is testimonial (i.e., whether the primary purpose of the conversation was to create an out-of-court substitute for trial), the Court also considers "standard rules of hearsay, designed to identify some statements as reliable * * *." *Id*. at 358-359. The relevant inquiry is not the actual purpose of the individuals involved in the encounter, but is the purpose a reasonable participant would have possessed. *Id*. at 360.

{¶40} After reiterating its main holdings from *Crawford* to *Bryant*, the United States Supreme Court in *Clark* advised that this did not mean the confrontation clause bars every statement that satisfies the primary purpose test: "We have recognized that the Confrontation Clause does not prohibit the introduction of out-of-court statements that would have been admissible in a criminal case at the time of the founding. * * * Thus, the primary purpose test is a necessary, but not always sufficient, condition for the exclusion of out-of-court statements under the Confrontation Clause." *Ohio v. Clark*, __ U.S. __, 135 S.Ct. 2173, 2180-2181, 192 L.Ed.2d 306 (2015) (citing examples involving forfeiture by wrongdoing and dying declaration).

{¶41} Rather than address the admissibility of Sydney's statement to the detective, the state responds that even assuming arguendo there was an error in allowing the detective to testify about what Sydney told him at the police station, admission of the statement obtained at the police station was harmless beyond a reasonable doubt. *See State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 192 (even assuming there was confrontation-clause violation, admission of the evidence was harmless beyond a reasonable doubt where there was no reasonable possibility the improperly admitted evidence contributed to the conviction). Appellant's friend already testified that Appellant admitted he committed the shooting at Walmart due to the victim's interaction with Appellant's girlfriend. The surveillance video showed the shooter drove a maroon Chrysler 200, which was confirmed by the 911 call. There was evidence that Appellant drove a maroon Chrysler 200, including evidence showing the license plate number of the maroon Chrysler 200 driven by Appellant three days before the shooting was the same license plate number as the maroon Chrysler 200 found burning (along with clothing matching that worn by the shooter) less than two hours after the shooting.

{¶42} The state additionally emphasizes the texts from Appellant's phone to Sydney after the shooting: complaining she was with the victim at the scene and at the hospital; stating she must choose sides; noting he was on the run without denying he was the shooter; and threatening she would go down with him. Before the shooting, she received a text from Appellant's phone threatening he had "hitters" on his mind and "watch they might come in there to get watch"; a detective testified "hitters" was street lingo for "[p]eople that would come kill you." (Tr. 454). The state also points to Detective Solic's testimony on cross-examination suggesting that it was his opinion that Appellant was the shooter seen on the surveillance footage. (Tr. 459).

19

{¶43} Furthermore, Detective Yacavone testified that Sydney's statement at the police station identifying her ex-boyfriend, Dashawn Craig, as the shooter was a reiteration of her statement at the scene. (Tr. 346). The detective was only at the scene for five minutes, racing there from the nearby police station. An ongoing emergency was occurring in the minutes after the shooting where the scene at the store was chaotic, the shooting victim was yelling that he was going to die, and his friend (who was steps away from the shooting as it occurred) was speaking to law enforcement who had just arrived on scene. The stability of the state of affairs at the scene was as yet unknown. The shooter had not been apprehended, and his immediate fleeing from the scene in a motor vehicle mere minutes before represented an emergency situation and a danger to the public.

{¶44} The circumstances objectively indicated the primary purpose of the statement at the scene was to enable police to assist in an ongoing emergency, and thus, Sydney's statement naming Dashawn Craig, her ex-boyfriend, as the shooter was nontestimonial. *See Hammon*, 547 U.S. at 822 (defining non-testimonial). The detective's testimony that she repeated this at the police station would not be prejudicial (even assuming the emergency was not still ongoing at the police station). She also provided background information and identified a photograph at the police station. Nevertheless, under the totality of the circumstances in this case, there was still an ongoing emergency at the police station when Sydney spoke to the detective.

{¶45} "[W]hether an emergency exists and is ongoing is a highly context-dependent inquiry." *Bryant*, __ U.S.__, 131 S.Ct. at 1158 (ongoing emergency where the victim suffered a gunshot wound and the police did not know the identity or location of shooter). "[T]he duration and scope of an emergency may depend in part on the type of weapon employed." *Id.* "An assessment of whether an emergency that threatens the police and public is ongoing cannot narrowly focus on whether the threat solely to the first victim has been neutralized because the threat to the first responders and public may continue." *Id.* ("Domestic violence cases like *Davis* and *Hammon* often have a narrower zone of potential victims than cases involving threats to public safety."). "Statements to police officers responding to an emergency situation are generally considered nontestimonial precisely because the declarant is usually acting—under great emotional duress—to secure protection or medical care." *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028 (non-testimonial statements to officer who arrived 15 minutes after the 911 call).

{¶46} Here, the weapon was a firearm. This was a public shooting occurring at 7:42 a.m. in the part of a store parking lot which was right by the front door while store patrons were walking nearby through the lot. The victim was shot through a closed vehicle window and told police he never met the shooter. The suspect was in the process of fleeing by vehicle, but his location was unknown in the minutes after the shooting and while Sydney was at the police station. This was not comparable to

completed domestic dispute with the parties isolated from each other by police. (We also note the ex-girlfriend of the shooter appeared to be under continued threat as confirmed by text messages.)

{¶47} Although the interview after leaving the scene was in a formal setting, which is one factor in assessing the primary purpose of the interrogation, the police station was only three to five minutes from the scene of the shooting. The detective, who arrived at the scene within minutes and stayed only five minutes, transported her there because the scene was chaotic. Other officers remained at the scene. The shooting victim was being rushed to the hospital with a bullet lodged in his abdomen, and Sydney was requesting to be transported to the hospital; instead, the detective first drove her to the nearby police station as part of enabling the Austintown police to respond to the ongoing emergency of a fleeing maroon Chrysler 200, such as knowing what name and photograph to place in the all-points bulletin being broadcast around the area along with the vehicle description.

{¶48} The objective circumstances placed on the record indicate a reasonable person would believe there was still a need to ascertain if there was a public threat involved in the perpetrator's flight when the interview commenced 20 minutes after the shooting. Regardless, as mentioned above, her statement that her ex-boyfriend Dashawn Craig was the shooter was already admissible as it was previously given in the midst of a clear emergency situation with a primary purpose of assisting the evaluation of the emergency rather than provide an out-of-court substitute for trial. Additional background information on the victim was not prejudicial.

{¶49} As to Sydney's identification of a photograph of Appellant as her ex-boyfriend (whom she previously identified as the shooter and called "Dashawn Craig"), we do not have the video of the interview to ascertain the timing (or evolution of the situation from emergency to testimonial) as it was not played to the jury. It was viewed by the trial court in making the admissibility determination. In any event, there was other overwhelming evidence connecting Appellant "Terrance Dashawn Craig" to the "Dashawn Craig" Sydney said was her ex-boyfriend and the shooter, including: the report to police three days before the shooting attributing a license plate number to Appellant; that license plate number matched the license plate of the car burned less than two hours after the shooting; the burned car was the same make, model, color, and newness as the car used by the shooter in the video; the car contained burned clothing matching that worn by the shooter; Terrance Craig's iCloud account had been used on Sydney's phone; Appellant provided his phone number to a state agent a week before the shooting; his number texted Sydney in a threatening and incriminating manner a half hour before the shooting and hours after the shooting; and the testimony of Appellant's friend that while Appellant was incarcerated on the current offenses, he admitted to the daytime Walmart shooting and disclosed his motive was the victim's relationship with his girlfriend.

{¶50} In sum, we conclude there was an ongoing emergency while the detective was at Walmart listening to Sydney to ascertain the parameters of the emergency and how to respond rather than for the primary purpose of establishing facts for the prosecution. The portion of Sydney's statement made at the scene did not become prejudicial testimony when it was reiterated at the nearby police station mere minutes later, and the emergency had not yet ended when they arrived at the police station. Even if the emergency situation devolved at some point, the additions to her earlier statement were not prejudicial and there was not a reasonable possibility that her identification of a photograph attached to Appellant's official records contributed to his conviction where other overwhelming evidence showed Appellant Terrance Dashawn Craig was the person Sydney called Dashawn Craig, her ex-boyfriend and the shooter of Dawon. This assignment of error is overruled.

*Craig*, 2020 WL 1487282, 2020-Ohio-1102, ¶¶33-50.

Mr. Craig fails to demonstrate that the state appellate court reached a conclusion contrary to law or an unreasonable determination of the facts. As reproduced above, the state appellate court correctly articulated the *Crawford* standard and concluded that no Confrontation Clause violation occurred because, considering the circumstances, the police conducted the interview of Ms. Williams for the primary purpose of assessing the threat of an ongoing emergency. As the state appellate court correctly noted, "whether an emergency exists and is ongoing is a highly context-dependent inquiry." *Bryant*, 562 U.S. at 365. The Supreme Court has held that "[t]he duration and scope of an emergency may depend in part on the type of weapon employed." *Id.* And "[a]n assessment of whether an emergency that threatens the police and public is ongoing cannot narrowly focus on whether the threat solely to the first victim has been neutralized because the threat to the first responders and public may continue." *Id.*

The state appellate court reached a reasonable determination of the facts in assessing that there was ongoing emergency when Ms. Williams arrived at the station. Although Mr. Craig focuses a portion of his argument on the fact that Ms. Williams' interview was conducted in the formal setting of a police station, the state appellate court reasonably concluded that this fact is not determinative of the purpose of interview. Notably, the police station was merely three to five

minutes from the scene of the shooting. *Craig*, 2020 WL 1487282, ¶47. Significantly, Detective Yacavone arrived at the scene within minutes of the shooting and stayed only five minutes. *Id.* Detective Yacavone then transported Ms. Williams to the police station because the crime scene was "chaotic." *Id.* Indeed, Mr. Brigham was rushed to hospital to receive medical treatment for the bullet in his abdomen *id.,* all while he held his side in pain and repeatedly declared that he was going to die. Tr. 269, 271. At that time, the perpetrator had fled the scene in a maroon Chrysler 200, and his whereabouts were unknown in the minutes after the shooting and while Ms. Williams was at the police station. *Id.*, ¶¶46-47. Detective Yacavone drove Ms. Williams to the nearby police station just 20 minutes after the crime to obtain information, such as the name and photograph, to place in the all-points bulletin being broadcast around the area, along with the vehicle description to respond to the ongoing emergency of the perpetrator's flight. Given the objective circumstances, the state court correctly concluded that this interview was for the purpose of responding to an ongoing emergency. Nor does Mr. Craig demonstrate that Ms. Williams' statements were testimonial under clearly established law. Accordingly, he is not entitled to habeas relief based on the trial court's admission of these statements.

And even if admission of these statements violated the Confrontation Clause, the state appellate court correctly concluded that this would constitute harmless error. Confrontation Clause violations are subject to harmless error analysis, which requires that an error is harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Hawkins v. Ganshimer*, 286 F. App'x 896, 902 (6th Cir. 2008) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)). In making that determination, the court considers "the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting

the testimony of the witness on material points, … and, of course, the overall strength of the prosecution's case." *Hawkins*, 286 F. App'x 896, 902-03 (quoting *Van Arsdall*, 475 U.S. at 684).

Mr. Craig challenges the credibility of Ms. Williams' statements at the police station, asserting that these statements should be viewed "with the utmost speculation" as Ms. Williams previously identified the shooter as an "unknown male" in a 911 call at the scene, and Detective Yacavone's testified that it appeared Ms. Williams was omitting some relevant information in her interview. (ECF No. 9, PageID#935 (citing Tr. 309, 374-75, 544; *Craig*, 2020 WL 1487282, ¶2.)) But this argument fails to rebut the state appellate court's determination that Ms. Williams' statement at the station house identifying Mr. Craig as the shooter was not prejudicial due to the "other overwhelming evidence" connecting Mr. Craig to the shooting. *Craig*, 2020 WL 1487282, ¶49.

Specifically, the state appellate court pointed to the following evidence in support of this determination: (1) a police report filed three days before the incident that attributed the car's license plate number to Mr. Craig; (2) the license plate number matched the license plate of the car that was burned less than two hours after the shooting; (3) the burned car was the same make, model, color, and newness as the car used by the shooter in the video; (4) Mr. Craig's iCloud account had been used on Ms. Williams' phone before the shooting; (5) Mr. Craig provided his phone number to a state agent a week before the shooting; (6) Mr. Craig's number texted Ms. Williams in a "threatening and incriminating manner" approximately 30 minutes before the shooting and hours after the shooting; and (7) the testimony of Mr. Craig's friend that Mr. Craig admitted to the shooting and disclosed that his motive was the victim's relationship with his girlfriend. *Id.* Given the significant circumstantial evidence connecting Mr. Craig to the shooting, the state appellate court reasonably concluded that the admission of the statements did not have a

"substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. Accordingly, I recommend that the Court find that this ground for relief lacks merit.

### C.  Ground Two: Confrontation Clause Violation by Nurse and Medic

As his second ground for relief, Mr. Craig argues that his constitutional right to confront witnesses was violated by the admission of testimony from a medic and an emergency room nurse practitioner regarding Ms. Williams' statements that identified Mr. Craig as her assailant. (ECF No. 1-2, PageID#28-31; ECF No. 9, PageID#937-41.) Respondent first contends that this ground for relief is procedurally defaulted because Mr. Craig did not fairly present his claim to all levels of review at the state level as he failed to raise this argument at the Ohio Supreme Court. (ECF No. 7, PageID#70-72.)

In the alternative, Respondent argues that Mr. Craig's argument lacks merit. (*Id.* at PageID#73.) On reply, Mr. Craig argues that he has sufficient cause to excuse his procedural default because, although appellate counsel identified that Mr. Craig's Sixth Amendment rights were violated, appellate counsel "did not thoroughly vet all of the grounds upon which it could be raised." (ECF No. 9, PageID#942-43.) For the following reasons, I recommend that the Court find Mr. Craig's argument both procedurally defaulted and meritless.

#### 1.  *Procedural Default*

I agree with Respondent that Mr. Craig's claim is procedurally defaulted because he did not fairly present this specific argument to the Ohio Supreme Court. A claim is fairly presented when it has been asserted as a federal constitutional right at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010). Further, for a claim to be fairly presented, the petitioner must present both the factual and legal bases of the claim. *Hicks v. Straub*, 377 F.3d 538, 522 (6th Cir. 2004). And the claim "cannot rest on a legal

theory which is separate and distinct from one that has been previously reviewed and rejected by a state court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998.)

Although Mr. Craig raised arguments regarding the Confrontation Clause to the Ohio Supreme Court, these arguments were premised around different facts. Specifically, Mr. Craig's argument in the Ohio Supreme related to Ms. Williams' statements to Detective Yacavone, *not* her statements to the medic and nurse practitioner. (ECF No. 7-2, Ex. 10, PageID#196-201.) Indeed, Mr. Craig even concedes this point. (ECF No. 9, PageID#491.) Accordingly, Mr. Craig did not fairly present this argument and procedurally defaulted this ground for relief.

The remaining question is whether Mr. Craig can demonstrate cause and prejudice for this procedural default. A petitioner may overcome the procedural default of a claim by showing cause for failing to raise the claim and resulting prejudice. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991). Relying on *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Gunner v. Welch*, 749 F.3d 511 (6th Cir. 2014), Mr. Craig contends that his procedural default can be excused because his appellate counsel was ineffective for failing to raise this issue at all stages of the state review process. This argument is not well-taken.

*Gunner* is factually and legally distinguishable from this case. In *Gunner*, the Sixth Circuit held that it was ineffective assistance of appellate counsel to fail to advise the habeas petitioner of when the trial transcript had been filed and of the necessity for raising an ineffective assistance of trial counsel claim in a post-conviction petition. *See* 749 F.3d at 520. But the U.S. Supreme Court has held that, before relying on ineffective assistance of appellate counsel as an excuse for failure to properly present a constitutional claim to the state courts, a habeas petitioner must first present the ineffective assistance of appellate counsel claim to the state courts in the manner they have prescribed. *Edwards v. Carpenter*, 529 U.S. 446 (2000). Under Ohio law, claims of ineffective

assistance of appellate counsel must be raised in a motion to re-open the appeal before the Ohio

Court of Appeals. *Monzo v. Edwards*, 281 F.3d 568, 577 (6th Cir. 2002) (citing *State v. Murnahan*,

63 Ohio St.3d 60, 584 N.E.2d 1204 (1992)); Ohio App. R. 26(B)).

Here, Mr. Craig never filed such a motion alleging that his appellate counsel was

ineffective for failing to raise this specific argument to the Ohio Supreme Court, despite appellate

counsel previously raising this argument to the Ohio Court of Appeals. Moreover, Mr. Craig fails

to establish that appellate counsel did not advise Mr. Craig of his post-conviction rights. Finally,

Mr. Craig fails to establish any other excuse for procedural default exists here, *i.e.,* actual

innocence or cause and prejudice. Accordingly, I recommend that this ground for relief be

dismissed because it is procedurally defaulted.

### 2. *Merits*

In the alternative, I recommend that the Court reject this ground for relief because it lacks

merit. Mr. Craig asserts that the state appellate court improperly concluded that Ms. Williams'

statements to a medic and nurse practitioner identifying Mr. Craig as her assailant were not

testimonial. Respondent argues that even if Mr. Craig had properly preserved his second ground

for relief, the ground should be dismissed because it is meritless. (ECF No. 7, PageID#72.) For the

following reasons, I agree.

To the extent that Mr. Craig alleges that the Ohio Court of Appeals improperly determined

that Ms. Williams' statements fell under hearsay exceptions under Ohio law, alleged errors in

evidentiary rulings by state courts are generally not cognizable for federal review. *Moreland*, 699

F.2d at 923. And Mr. Craig fails to establish how this alleged error fell into the narrowly defined

category of infractions that violate fundamental fairness. *Wright*, 99 F.2d at 178.

Finally, Mr. Craig fails to establish that the admission of Ms. Williams' statements violated his Confrontation Clause rights. The Confrontation Clause prohibits the admission of testimonial statements by a non-testifying witness unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 68. In *Crawford*, the Supreme Court did not "spell out a comprehensive definition of 'testimonial," but it did note that "testimonial" includes police interrogations and prior testimony at a preliminary hearing, before a grand jury, or at a former trial. *Id.*

As set forth above, when assessing whether a statement is testimonial, courts must consider whether it has "a primary purpose of creating an out-of-court substitute for trial testimony." *Bryant*, 562 U.S. at 358. In *Ohio v. Clark*, 576 U.S. 237, 244-255 (2015), the Supreme Court explained that its case law following *Crawford* had "labored to flesh out what it means for a statement to be testimonial." The Supreme Court then concluded that "[i]n the end, the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Id.*

Applying AEDPA deference, the Ohio Court of Appeals' holding was not contrary to or an unreasonable application of governing law. Assessing the totality of the circumstances, the state appellate court concluded that Ms. Williams' statements did not have the primary purpose of creating evidence for Mr. Craig's prosecution. *Craig*, 2020 WL 1487282, ¶65. Specifically, the state appellate court stated:

> {¶52} Appellant asserts a violation of the confrontation clause (and the hearsay rules) as to the following evidence: (1) the medic testified that, while evaluating and treating Sydney in the ambulance on the way to the hospital, Sydney explained her head wound by saying she was struck in the head with a gun by her boyfriend; and (2) the nurse practitioner testified that, while evaluating and treating Sydney's injuries in the emergency room, Sydney explained that her ex-boyfriend hit her with a gun and his fists. Appellant argues these medical providers should not have been permitted to testify as to whom the patient said assaulted her. He refers back to the

28

law in the second assignment of error on testimonial statements being barred under the confrontation clause. He then applies the objective witness test employed in the Ohio Supreme Court's *Stahl* case and concludes an objective witness would reasonably believe the declarations during medical treatment would be available for use at a later trial.

{¶53} Because the line of cases from *Crawford* to *Bryant* involved statements to law enforcement officers, the United States Supreme Court declined to decide whether the same confrontation clause analysis applied to statements made to individuals other than law enforcement officers until directly faced with the issue in *Ohio v. Clark*, —— U.S. ——, 135 S.Ct. 2173, 2180, 192 L.Ed.2d 306 (2015). Prior thereto, the Ohio Supreme Court adopted the objective-witness test for evaluating statements made to someone other than law enforcement personnel, holding they are testimonial when an objective witness would reasonably believe the questioning served primarily a prosecutorial purpose. *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, ¶ 36 (citing a definition listed in *Crawford* as an example of what an amicus brief proposed for the definition of testimonial statements).

{¶54} In *Stahl*, the Ohio Supreme Court concluded that a rape victim's response to questions by a medical professional in a special sexual assault unit, including the perpetrator's identity, were made primarily for a medical purpose and were nontestimonial. *Id*. at ¶ 46 (even though the nurse's unit had a purpose to assist law enforcement and collect evidence for prosecution, the victim filed a report at the police station before appearing at the hospital, and a police officer remained in the room while the medical professional interviewed the victim). The Court pointed out the victim could have reasonably assumed that identifying the person who attacked her to a medical professional would serve a medical purpose, such as to structure a plan for her safe release. *Id*.

{¶55} In *Arnold*, the Ohio Supreme Court held: "Statements made for medical diagnosis and treatment are nontestimonial." *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 41. The Court then found the victim's statements that Arnold performed various sexual acts on her were nontestimonial as they were for medical diagnosis and treatment, while the victim's extraneous statements (her description of his boxer shorts and his locking a door) were not for medical treatment. *Id*. (finding the nurse's forensic interview had a dual function of medical treatment and investigator for law enforcement, essentially separating the answers according to the primary purpose of medical or evidentiary).

{¶56} Subsequently in the *Clark* case, a trial court admitted a three-year-old's statement, wherein he named the person who injured him, to his preschool teachers who questioned him after noticing his injuries. The Ohio Supreme Court found a confrontation violation, but the United States Supreme Court reversed, finding no violation. *Clark*, —— U.S. ——, 135 S.Ct. 2173. We note here that the confrontation clause in Section 10, Article I of the Ohio Constitution provides no greater

confrontation right than the Sixth Amendment; the state and federal confrontation clauses are therefore co-extensive. *Arnold*, 126 Ohio St.3d 290 at ¶ 12.

{¶57} After observing that it had not yet specified the test applicable when a statement is made to someone other than law enforcement, the United States Supreme Court then applied the primary purpose test to a statement to persons other than law enforcement, while observing that these statements "are much less likely to be testimonial than statements to law enforcement officers." *Clark*, ─── U.S. ─── ───, 135 S.Ct. at 2180-2181 (rejecting the request to hold the confrontation clause did not apply to statements to non-law enforcement because "at least some statements to individuals who are not law enforcement officers could conceivably raise confrontation concerns"). Courts were instructed to "evaluate challenged statements in context, and part of that context is the questioner's identity. * * * Statements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than statements given to law enforcement officers." *Id*. at 2182 ("the relationship between a student and his teacher is very different from that between a citizen and the police").

{¶58} In evaluating the totality of the circumstances, the *Clark* Court found: the questioning occurred in an informal setting immediately after the injuries were noticed; the situation qualified as an ongoing emergency as teachers would want to protect the child and possibly other children; the questions and answers were primarily aimed at identifying and ending the threat; a young child could rarely intend a statement to be used as a substitute for trial testimony; there was strong evidence these types of statements were admissible at common law; and Ohio's mandatory reporting requirements do not mean the teacher's mission was primarily to gather evidence for a prosecution (just as police responding to an ongoing emergency may not have this primary purpose). *Id*. at 2181-2183.

{¶59} The *Clark* Court concluded the victim's statements were not testimonial and thus not admitted in violation of the confrontation clause as there was "no indication that the primary purpose of the conversation was to gather evidence for [the defendant's] prosecution" and as the statements "clearly were not made with the primary purpose of creating evidence for Clark's prosecution." *Id*. at 2181, 2183. "Because neither the child nor his teachers had the primary purpose of assisting in Clark's prosecution, the child's statements do not implicate the Confrontation Clause and therefore were admissible at trial." *Id*. at 2177.

{¶60} Here, there appeared to be an emergency where the victim of a second felonious assault was found. The responding police officer described the victim as being covered in blood. The medic arrived in an ambulance and treated the victim while transporting her to the emergency room where she was presented to a nurse practitioner who offered to suture the head wound. From the perspective of the speaker and the listener, Sydney's description of how she obtained her injuries and the mechanism causing the injury was relevant to medical diagnosis. As for the

object causing the injuries, a person who was hit in the head with a gun may have a risk of concussion and fractures, whereas a person suffering a wound that was caused by a knife may not have these same risks; likewise, tetanus may be a concern depending on the weapon.

{¶61} As for the portion of the statement identifying the perpetrator, identity can be relevant to medical personnel providing medical treatment. The medical provider may decide to refer the patient and formulate different treatment plans based on the assailant's identity. For instance, the medical provider may refer a patient suffering abuse to a hospital social worker for a particular form of assistance. Or, the medical provider may refer or release certain patients directly to an abused women's shelter for transportation from the hospital and housing. *See Stahl*, 111 Ohio St.3d 186 at ¶ 46. The victim's psychological state can also be of medical concern, and a referral or recommendation may depend on many facts including the identity of the perpetrator. *See State v. Triplett*, 7th Dist. Mahoning No. 17 MA 0128, 2018-Ohio-5405, ¶ 95-97.

{¶62} If we applied the objective witness test requested by Appellant, we would conclude an objective witness being treated as a patient in the ambulance on the way to the hospital and then in the emergency room would not reasonably anticipate that her statement identifying her assailant as her ex-boyfriend would be used at a later trial under the circumstances herein. In *Stahl*, the adult victim's statement was not testimonial even though the nurse worked in a special unit tasked with gathering evidence and a police officer was present for the examination. Here, there was no indication the emergency room nurse practitioner had any involvement in a special forensic unit or that she was performing a medical examination with forensic components; nor was the medic treating a patient in an ambulance charged with uncovering crimes or gathering evidence. They were charged with responding to the emergency medical case placed before them. "Statements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than statements given to law enforcement officers." *Clark*, 135 S.Ct. at 2182.

{¶63} Appellant recognizes that statements about assaults to family and friends are typically nontestimonial. *See, e.g., State v. Peeples*, 7th Dist. Mahoning No. 07 MA 212, 2009-Ohio-1198, ¶ 29-30. However, he says statements to friends and family are made in confidence and thus distinguishable from the statements here. Yet, statements to medical personnel are typically thought to be made in confidence as well. The relationship between the victim of a beating and the medical professional rendering medical treatment (especially in the private setting of an ambulance rushing to the hospital or an examination room in the emergency department after arriving by ambulance) is different from the relationship between a citizen and a police officer. *See Clark*, 135 S.Ct. at 2182.

{¶64} After stating, "only testimonial statements are excluded by the Confrontation Clause," the United States Supreme Court observed: "Statements to friends and

neighbors about abuse and intimidation and statements to physicians in the course
of receiving treatment would be excluded, if at all, only by hearsay rules." *Giles v.
California*, 554 U.S. 353, 376, 128 S.Ct. 2678, 2692–93, 171 L.Ed.2d 488 (2008).
*See also Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312, 129 S.Ct. 2527, 174
L.Ed.2d 314 (2009) ("medical reports created for treatment purposes, which would
not be testimonial under our decision today"). The intent of an objective declarant
is considered under the primary purpose applied by the United States Supreme
Court in *Clark*, along with the questioner's intent and other considerations.

{¶65} Under the totality of the circumstances, there is no indication the medical
personnel here had a primary purpose of investigating a crime or gathering evidence
for future prosecution, and there is no indication the assault victim made the
statement with a primary purpose of creating evidence for Appellant's prosecution.
*See Clark*, 135 S.Ct. at 2181, 2183. The confrontation clause argument related to
the second count of felonious assault is overruled.

*Craig*, 2020 WL 1487282, ¶¶ 1-65 (footnotes omitted).

Here, the Ohio Court of Appeals correctly determined that Ms. Williams' statements were
non-testimonial in nature because the primary purpose of the conversations was to obtain medical
treatment, not to garner information to prosecute Mr. Craig. Applying state court precedent
interpreting *Crawford* and its progeny, the state appellate court correctly determined that Ms.
William's statements regarding her injuries and Mr. Craig's role in these injuries were relevant to
medical treatment. *Id.*, ¶¶61-65. Specifically, the state appellate court found that the identity of an
assailant may be relevant in how a medical provider structures her medical treatment. *See id.*
Significantly, the state appellate court found that there is no indication—and Mr. Craig does not
contest this finding here—that the emergency room nurse practitioner or the medic were charged
with uncovering crimes or gathering evidence related to the felonious assault of Ms. Williams. *Id.*,
¶62.

As the state appellate court observed here, and as the U.S. Supreme Court previously noted,
"[s]tatements made to someone who is not principally charged with uncovering and prosecuting
criminal behavior are significantly less likely to be testimonial than statements given to law

enforcement officers." *Clark*, 576 U.S. at 249. Finally, the state appellate court also determined that these disputed statements were non-testimonial by assessing the context of the questioner's identity. The state appellate court here determined that this was not a relationship between a citizen and a police officer, but rather a "relationship between the victim of a beating and the medical professional rendering medical treatment (especially in the private setting of an ambulance rushing to the hospital or an examination room in the emergency department after arriving by ambulance)." *Craig*, 2020 WL 1487282, ¶63. Thus, the appellate court correctly found that these statements were made in confidence to medical personnel. Therefore, the Ohio Court of Appeals concluded that Ms. Williams' statements to the medic and nurse practitioner were non-testimonial.

Mr. Craig does not point to clearly established Supreme Court precedent that compels the conclusion that statements made to a medic and a nurse practitioner after a felonious assault for the purpose of receiving medical treatment—which included identification of the assailant—is testimonial. Thus, habeas relief is not available to Mr. Craig on this ground. *See White v. Woodall*, 572 U.S. 415, 427 (2014); *Dorsey v. Cook*, 677 F. App'x 265, 267 (6th Cir. 2017). Accordingly, I recommend that the Court deny this ground for relief because it lacks merit.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A. <u>Legal Standard</u>

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; *see also* 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)].)"). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

**B.  Analysis**

Mr. Craig has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

**VII.  RECOMMENDATION**

34

Because Mr. Craig has presented either procedurally defaulted and/or meritless claims, I RECOMMEND that the Court DISMISS and/or DENY his Petition for Writ of Habeas Corpus (ECF No. 1) under 28 U.S.C. § 2254 and not grant him a certificate of appealability. I also RECOMMEND that Michael Swartz, the Acting Warden of Toledo Correctional Institution—where Mr. Craig is currently incarcerated—should be substituted for Ronald Erdos as the Respondent in this case.

Dated:  March 28, 2024

*/s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019).

Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).